UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE HOFFMAN,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:18-cv-1609-KJN<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 17, 20) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Title II disability insurance benefits.[1] In her summary judgment motion, Plaintiff primarily contends the Administrative Law Judge ("ALJ") erred in weighing medical evidence and testimony regarding Plaintiff's mental impairments, erred in formulating Plaintiff's residual functional capacity, and erred in finding Plaintiff could perform past work. The Commissioner opposed and filed a cross–motion for summary judgment.

After considering the parties' written briefing, the record, and the applicable law, the Court DENIES the Commissioner's motion for summary judgment, GRANTS Plaintiff's motion, and REMANDS the case to the Commission for further proceedings.

///

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and the parties consented to the jurisdiction of the undersigned for all purposes. (See ECF Nos. 6, 19.)

1

# I. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS[2]

Plaintiff applied for disability insurance benefits on November 13, 2014, alleging an onset date of January 17, 2013. (Administrative Transcript ("AT") 55.) Plaintiff claimed the following medical conditions: "Back Problems. Bipolar. Hand Tremors." (Id.) Plaintiff's application was denied initially and again upon reconsideration. (AT 54, 66.) Plaintiff, aided by an attorney, sought review of these denials with an ALJ. (AT 81–83.) At a May 9, 2017 hearing, Plaintiff testified about her conditions, and the ALJ heard testimony from a vocational expert regarding Plaintiff's ability to work. (AT 34–48.)

On July 27, 2017, the ALJ issued a decision determining that Plaintiff was not disabled for the relevant period. (AT 15–27.) At step one, the ALJ concluded Plaintiff had not engaged in substantial gainful activity since January 17, 2013. (AT 17.) At step two, the ALJ found Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine; osteoarthritis of the bilateral hands; and carpal tunnel syndrome of the bilateral hands with history of carpal tunnel release." (Id.) Relevant here, the ALJ found Plaintiff's alleged bipolar condition to cause "minimal limitation[s]," and so were deemed non–severe. (AT 19–20.) At step three, The ALJ determined the severe impairments did not meet or medically equal a listed impairment.

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571–76; Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987). The following summarizes the sequential evaluation:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

(AT 21).

Based on this information, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform "light work," with the following exceptions: "[She is limited to] frequent kneeling, crouching and climbing ramps and stairs; occasional stooping, crawling, and climbing ladders, ropes and scaffolds; and capable of frequent handling with right upper extremity." (AT 21.) In reaching this conclusion, the ALJ stated he considered Plaintiff's expressed symptoms, the objective medical evidence in the record, and the opinion evidence given by the examining and consulting physicians. (AT 21–26.) Relevant here, the ALJ stated the severity of Plaintiff's expressed symptoms were not consistent with the medical and other evidence in the record. (AT 22.) This conclusion included analyzing the evidence of Plaintiff's degenerative disc disease and back pain, her arthritis and carpel tunnel syndrome, and her treatment records regarding her hands and fingers. (AT 23–24.) This also included weighing the opinions of several non–examining physicians and a treating nurse practitioner. (AT 24–26.) Ultimately, the ALJ concluded at step four that Plaintiff was capable of performing past work as a "cashier II (as generally performed)," a "call out operator," and a "checker, apparel." (AT 26.)

On March 30, 2018, the Appeals Council denied Plaintiff's appeal. (AT 1–6.) Plaintiff then timely filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross–motions for summary judgment. (ECF Nos. 1, 17, 20.)

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008). Further, the

court may not reverse the ALJ's decision on account of harmless error.  <u>Buck</u>, 869 F. 3d at 1048.

## III. ISSUES PRESENTED

Plaintiff alleges multiple errors on the ALJ's part, including assigning error:  (A) at step 2 by failing to include Plaintiff's bipolar disorder as a severe condition; (B) when formulating Plaintiff's RFC, by ignoring evidence when assessing Plaintiff's mental limitations and by failing to consider the combination of Plaintiff's severe and non–severe impairments; and (C) at step 4 by failing to make explicit and necessary findings as to the physical and mental demands of Plaintiff's past relevant work.  Plaintiff requests a remand for further proceedings.  (ECF No. 17.)

The Commissioner counters each of Plaintiff's arguments, contending that substantial evidence supported the ALJ's assessment of Plaintiff's mental functions and determination that she could perform past relevant work.  Thus, the Commissioner maintains the ALJ's opinion should be affirmed.  (ECF No. 20.)

## IV. LEGAL STANDARDS

### A. Evaluation of Medical Source Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  <u>Holohan v. Massanari</u>, 246 F. 3d 1195, 1201–02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F. 3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion.  <u>Holohan</u>, 246 F. 3d at 1202.  The medical opinion of a claimant's treating doctor is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).  When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record.  20 C.F.R. § 404.1527(c)(2)–(6).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record;

and (2) clinical findings support the opinions. Lester, 81 F. 3d at 831. A contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F. 2d 747, 751 (9th Cir. 1989). Conversely, to reject an uncontradicted opinion of a treating or examining doctor, the ALJ must state "clear and convincing reasons that are supported by substantial evidence." Ryan v. Comm'r, 528 F.3d 1194, 1198 (9th Cir. 2008).

In addition to considering the medical opinions of doctors, an ALJ must consider the opinions of medical providers who are not within the definition of "acceptable medical sources." See 20 C.F.R. § 404.1527(b), (f). While those providers' opinions are not entitled to the same deference, an ALJ may give less deference to "other sources" only if the ALJ gives reasons germane to each witness for doing so. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). The same factors used to evaluate the opinions of medical providers who are acceptable medical sources are used to evaluate the opinions of those who are not. Id. (citing § 404.1527(f)).

B. Evaluation of a Claimant's Testimony and Third–Party Reports

In evaluating the extent to which an ALJ must credit the claimant's report of her symptoms, the Ninth Circuit has set forth the following two–step analysis:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v Berryhill, 874 F.3d 648, 655 (9th Cir. 2017). To reject third-party reports of a claimant's impairments, the standard is much lower: an ALJ need only "give reasons that are germane to

5

each witness." Id. (citing Molina, 674 F.3d at 1114).

V. **DISCUSSION**

**A. The ALJ did not commit reversible error in failing to find Plaintiff's bipolar disorder to be severe at step 2.**

Under step 2, the ALJ is to classify any impairments as either "severe" or "non–severe." See 20 C.F.R. §§ 404.1520, 404.1571–76. A "severe" impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). The step 2 assessment is a "de minimus screening to dispose of groundless claims." Edlund, 253 F3d at 1158.

Plaintiff argues that the ALJ's determination of Plaintiff's bi–polar disorder as a non– severe impairment was error, given Plaintiff's statements made to her physicians (as well as consistent statements made by Plaintiff's sister to these physicians), and her medication and examination history. (ECF No. 17–1 at pp. 9–10.) Plaintiff relies on Webb v Barnhart, 433 F.3d 683 (9th Cir. 2005), for the proposition that the ALJ's conclusion must be "clearly established by medical evidence." However, as the court in Webb noted, "[a]n impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb, 433 F.3d at 686 (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)).

Here, the ALJ stated that because Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas, they are non–severe." (AT 20 (citing 20 CFR 404.1520a(d)(l)). In reaching this determination, the ALJ addressed the four functional areas set out in the "Paragraph B" regulations for evaluating mental disorders. (AT 19.) A review of the record supports the ALJ's finding, and because other error is apparent in the ALJ's decision, the undersigned will not dwell on this point. See, e.g., Lusardi v. Astrue, 350 Fed. App'x 169, 172 (9th Cir. Oct. 30, 2009) (evidence of mild to no functional limitations attributable to a diagnosis of major depressive disorder sufficient to support a non-severe finding); Stenberg v. Comm'r, 303 Fed. App'x 550, 552 (9th Cir. 2008) (no severe mental impairment based on diagnosis of mild depressive disorder and only mild difficulties in

maintaining social functioning, concentration, persistence, and pace).

**B. The ALJ failed to consider probative evidence of Plaintiff's mental limitations in formulating the RFC.**

Despite finding that the ALJ did not err in assessing Plaintiff's bipolar disorder at step 2, the undersigned is concerned that the ALJ then appears to have fallen short in his duty to account for this non–severe condition in formulating Plaintiff's RFC. The applicable regulation requires the ALJ to consider all of Plaintiff's medically determinable impairments, including any that are not severe. 20 C.F.R. § 404.1545(a)(2); see also § 404.1545(e) ("When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of this subpart, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.")

Here, after considering the scope of Plaintiff's bipolar disorder at step 2, the ALJ stated "the following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (AT 20.) The ALJ's formulation concluded Plaintiff had the RFC to perform light work, with exceptions only for certain physical activities. (See AT 21; see also page 3 of this order, supra.) As no mental exceptions were included in the RFC formulation, the undersigned can only assume the ALJ found Plaintiff's "mild . . . medically–determinable mental impairments" to be irrelevant to her RFC.

The ALJ then supported his RFC formulation with five pages of his rationale, including citations to multiple medical records, opinions of Plaintiff's physicians, and Plaintiff's subjective symptom statements. (See AT 21–26.) However, the undersigned cannot tell whether the ALJ actually considered Plaintiff's mental limitations in formulating the RFC, as the decision appears to omit further substantive discussion of Plaintiff's bipolar disorder. For example, in the first full paragraph on AT 23, the ALJ states that "[a]lthough evidence reveals the claimant has undergone regular treatment since January 2013 for her conditions, overall it appears the treatment has been routine and/or follow up treatment to monitor medications and compliance." The ALJ could have

intended this statement to include his rationale regarding Plaintiff's mental limitations. However, the remainder of that paragraph, and the next three paragraphs, all concern Plaintiff's physical impairments. (See AT 23.) Similarly, the bulk of the ALJ's discussion at AT 24–25 is dedicated to his evaluation of the medical and opinion evidence of Plaintiff's physical conditions. At best, the ALJ's statements at the bottom of AT 22 ("[d]espite her impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction.") and bottom of AT 23 ("the record reveals that the claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date.") could arguably encompass his evaluation of Plaintiff's physical and mental limitations.

However, as Plaintiff points out, there appears to be evidence probative of her claim that her bipolar disorder does in fact mentally limit her—evidence the ALJ appears to have forgotten to consider in formulating the RFC. Most probative is the mental examination performed by Dr. Vincent Gong in May of 2016, which the ALJ neither discusses nor cites to at any point in the discussion. (AT 1785–89.) As the Commission points out, competing medical and opinion evidence does exist in the record concerning Plaintiff's memory and other mental functions that the ALJ *did* discuss under step 2. Under Ninth Circuit precedent, then, the ALJ needed to provide "specific and legitimate" reasons for discounting the findings and opinions that arose from Dr. Gong's examination. Lester, 81 F. 3d at 831. Again, it may well be that the ALJ intended to give little weight to Dr. Gong's opinion, but to do so, the ALJ cannot simply ignore probative evidence. See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394–95 (9th Cir. 1984) ("ALJs "need not discuss all evidence presented to [them]. Rather, [they] must explain why significant probative evidence has been rejected."); see also Diedrich v. Berryhill, 699 Fed. App'x 726 (9th Cir. 2017) (reaffirming the proposition). This also may include Plaintiff's prescriptions for Ambien (AR 2065) and Hydroxyzine (AR 1827, 1832), and the notes from Plaintiff's checkups with her treating nurse practitioner and social worker. (See AT 1719, 2065); see also Molina, 674 F.3d at 1111 ("While those providers' opinions are not entitled to the same deference, an ALJ may give less deference to "other sources" only if the ALJ gives reasons germane to each witness for doing so."). Thus, the ALJ committed error in the formulation of

Plaintiff's RFC by apparently failing to consider Plaintiff's non–severe mental limitations stemming from her bipolar disorder—which the ALJ found at step 2 to be a "mild" "medically–determinable mental impairment." (AT 20.)

In requesting a remand for further proceedings, Plaintiff correctly recognizes that additional proceedings are necessary. Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016). As indicated above, the error is in failing to recognize and discuss probative evidence. It may well be that the ALJ completely discounts this evidence, or that it has a minimal effect on her RFC. However, this conflict is for the ALJ, and not the Court, to resolve. Edlund, 253 F. 3d at 1156 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.").

**C. The undersigned does not reach the ALJ's step 4 analysis.**

As the Court remands for further proceedings, which will require reexamination of the evidence and a reformulation of Plaintiff's RFC, the undersigned does not reach Plaintiff's other challenge regarding the ALJ's step 4 determination. As the ALJ is aware, the applicable rulings of the Commission require, among other things, "[a] finding of fact as to the physical and mental demands of the past job/occupation." Findings of fact assist the Court in reviewing the ALJ's decision, and so the ALJ (and Plaintiff) would do well to develop this issue on remand. See Bowen, 482 U.S. at 146 n.5 ("The claimant bears the burden of proof in the first four steps of the sequential evaluation process.").

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Commissioner's motion for summary judgment (ECF No. 20) is DENIED;
2. Plaintiff's motion for summary judgment (ECF No. 17) is GRANTED;
3. This decision of the Commissioner is REVERSED, and the matter is REMANDED for further proceedings; and
4. The Clerk is directed to enter judgment in the Plaintiff and CLOSE the case.

Dated: January 22, 2020

hoff.1609

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE